Gregory P. Hacker (Wyo. Bar No. 6-3347)
HACKER, HACKER & KENDALL, P.C.
2515 Pioneer Avenue
Cheyenne, WY 82001
(307) 778-8844
Fax: (307) 635-2434
ghacker@hackerlaw.net



FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 MAY -8 PM 1:31

MARGARET BOTKINS, CLERK
CHEYENNE

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| AMY HUFFER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 20 CV 75-J ) |
| PLATTE COUNTY FAIR BOARD; PLATTE COUNTY, WYOMING; and the BOARD OF COUNTY COMMISSIONERS OF PLATTE COUNTY, WYOMING | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff Amy Huffer, by and through her attorney of record, complains as follows:

### I.
### SUMMARY

This is a straightforward failure to pay overtime case. Defendants employed the Plaintiff to work at the Platte County Fair Grounds. Although Plaintiff frequently worked hours over forty in a week, the Defendants failed to pay her overtime pay as required by the Fair Labor Standards Act ("FLSA"). The Defendants' failure to comply with the FLSA was knowing and

willful; the Defendants knew that Plaintiff was working overtime hours and originally addressed the situation by allowing to Plaintiff to accumulate "Comp Time" hours which she could use later as paid time off instead of paying her overtime compensation wages. Later, Defendants changed their mind, refusing to let Plaintiff accumulate further "Comp Time" hours or use accumulated Comp Time hours, yet still did not pay her overtime compensation for the overtime hours she worked in violation of the FLSA. The Defendants' failure to pay Plaintiff for the overtime hours that she worked is a straightforward violation of the FLSA and for these reasons, Plaintiff seeks unpaid wages, liquidated damages, attorneys' fees, and all other relief permitted.

## II.
## JURISDICTION AND VENUE

1. Some of Plaintiff's claims are brought under the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). This Court has original jurisdiction to hear this complaint and to adjudicate those claims stated herein under 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper because all of the events or omissions giving rise to the claims occurred in this District, Plaintiff is a resident within this District, and Defendants are subject to personal jurisdiction in Wyoming.

## III.
## PARTIES

4. Defendants are governmental entities organized and operating pursuant to Wyoming law in Platte County, Wyoming. Platte County, Wyoming is a political subdivision of the State of Wyoming. The Board of County Commissioners of Platte County is the governing body of Platte County, Wyoming. The Platte County Fair Board ("Fair Board") is the

governmental entity and political body corporate created by Platte County and its Board of Commissioners pursuant to Wyo. Stat. §§ 18-9-101 and 18-9-102, which conducts and manages operations and business activities of the Platte County Fairground and Fair on behalf of Platte County. Defendants are an employer within the meaning of FLSA, 29 USC § 203(d). Defendants exercised ownership and operational control over Plaintiff concerning her employment.

5. Plaintiff Amy Huffer is a resident of Wyoming and worked as an employee for Defendants.

## IV. FACTUAL ALLEGATIONS

6. Plaintiff was employed by the Defendants for many years. In approximately May of 2015 she was assigned to be the "Director" at the Platte County Fairgrounds. She worked in this position from approximately May 2015 until the Fall of 2019.

7. When Plaintiff was assigned to be the "Director" at the Platte County Fairgrounds, she was the only full time employee working there. The assigned responsibilities for that position required her to regularly work more than 40 hours per week. In some weeks she would work as many as 100 hours.

8. Despite the title of Plaintiff's position being "Director" and being paid on the basis of an annual salary, it was not a management position, nor was it an executive, administrative, or professional position. The Fair Board was Plaintiff's immediate supervisor and was responsible for the management of operations and programs at the Platte County Fairgrounds. Plaintiff did not set policy, did not have executive authority for decision making, and did not exercise discretion or independent judgement with respect to matters of significance related to the Fairgrounds or its operations. Plaintiff's position did not require any professional

or other special certifications, degrees, or education.

9. Under the management, supervision, and authority of the Fair Board, Plaintiff's job duties consisted of routine and basic job duties, the vast majority of which were physical labor and routine clerical duties. Work done by Plaintiff included such things as cleaning, moving objects, cutting grass, grooming arenas, making repairs, taking phone calls, communicating with customers, and taking care of the setup and take down for events. Her position was not one that required any particular education or expertise.

10. Plaintiff made Defendant Fair Board aware of the large number of hours she was working as overtime. In approximately May 2015, the Fair Board established an arrangement with her whereby she would be given "Comp Time" hours to account for the hours she worked in a week over 40 hours in lieu of being paid for those overtime hours. The arrangement was that Plaintiff would earn one "Comp Time" hour for each hour she worked over 40 hours in any given week, and that she would then be able use the "Comp Time" hours she accumulated this way as paid time off.

11 Pursuant to this arrangement, Plaintiff kept track of the hours she worked on time sheets and time cards, and accumulated "Comp Time" hours as she worked overtime hours.

12. The Fair Board was aware of the overtime hours Plaintiff was working and the "Comp Time" hours Plaintiff was accumulating as a result due to the fact that Plaintiff would make regular reports to the Fair Board about the number of "Comp Time" hours she was accumulating due to overtime as well as the number of "Comp Time" hours she was using for paid time off.

13. Over time, Plaintiff accumulated more overtime "Comp Time" hours than she was able to use as paid time off. Plaintiff continued to have a very heavy workload that resulted in

large numbers of overtime hours. It was also difficult for Plaintiff to take very much time off to use those accumulated "Comp Time" hours because of the amount of time needed for the job duties and because she was the only full time employee there.

14. In approximately October 2017, Fair Board members approached Plaintiff to talk about her accumulated "Comp Time" hours. These members and Plaintiff discussed ways that Plaintiff might try to use her accumulated "Comp Time" hours at a greater rate by trying to take more days off. From this communication, it was evident that the Fair Board knew the large number of overtime hours that Plaintiff was working and had accumulated as "Comp Time." Plaintiff did her best to increase the number of days of "Comp Time" that she used following that conversation by taking more time off, although even when she took time off, she was still being required to make sure that Fair business was covered, including by doing such things as taking phone calls and picking up the mail.

15. In approximately March of 2018, the Fair Board conducted a supposed evaluation process for Plaintiff, during which Plaintiff's accumulated overtime "Comp Time" hours were acknowledged and discussed by the Fair Board. At that time Plaintiff was told that she would no longer be allowed to use her accumulated Comp Time Hours. At that time, Plaintiff had more than 740 accumulated and unused "Comp Time" hours which represented 740 hours of overtime that Plaintiff had worked between July 2016 and March 2018 for which she had not been compensated.

16. In that same process in March of 2018, the Fair Board told Plaintiff that she would no longer be allowed to accumulate any more overtime "Comp Time" hours, nor would she be paid for overtime hours worked even when she worked overtime hours. When they did this, the Fair Board was well aware that Plaintiff's job duties could not be accomplished without

working overtime hours, and thus were aware that Plaintiff would be working overtime hours even though she was not going to be compensated for those overtime hours worked.

17. In approximately March of 2018, a Fair Board member approached Plaintiff on behalf of the Board and communicated that the Board was willing to make a nominal payment in exchange for Plaintiff giving up her accumulated overtime "Comp Time" hours. At the April 2018 Fair Board meeting, Plaintiff made a proposal to the Board for compensation for those accumulated hours, but the Fair Board came back at its May 2018 meeting to decline Plaintiff's proposal, re-offer a nominal payment for the hours, and indicated that she could either take that offer or else nothing would be said about it again. Plaintiff declined the Board's proposal.

18. From March 2018 through the Fall of 2019, Plaintiff continued to work substantial amounts of overtime hours. So she not only had more than 740 hours of unpaid overtime already accumulated, but she continued to accumulate more hours of overtime for which she did not acquire "Comp Time" hours and for which she was not paid.

19. At the time of Plaintiff's employment with the Fair Board ended in the fall of 2019, she had worked well over a thousand hours of overtime hours for which she received no compensation from the Fair Board.

20. In November 2018, Plaintiff wrote to the Fair Board to address the failure to appropriately pay overtime hours in violation of the FLSA. In December 2018, Douglas Weaver, the county attorney (who represents all of the Defendants) responded to Plaintiff by means of a short letter summarily rejecting her position and asking her to explain her claim for overtime compensation. In January 2019, Plaintiff through her attorney, responded to Mr. Weaver's letter, by means of a letter that explained the basis for Plaintiff's non-exempt status under the FLSA and her right to over time compensation. That letter also asked Mr. Weaver to

provide an explanation, if any, of why the Defendants did not believe that Plaintiff was entitled to such compensation. Neither Mr. Weaver nor the Defendants ever responded to that communication.

21. In connection with filing this Complaint against Defendants, Plaintiff has complied with all governing provisions of the Wyoming Governmental Claims Act (Wyo. Stat. §1-39-101 et seq) including the requirements for the filing of a government claim pursuant to Wyo. Stat. § 1-39-113. Plaintiff has also complied with the signature and certification requirements of Article 16, Section 7 of the Wyoming Constitution and all other applicable Wyoming constitutional requirements. Plaintiff sent via certified mail to the business offices of Defendants, a sworn written statement of her claims/governmental claim entitled "Wyoming Governmental Claim of Amy Huffer" that was fully compliant with all applicable requirements of the Wyoming Governmental Claims Act, Wyo. Stat. § 1-39-113, the signature and certification requirements of Article 16, Section 7 of the Wyoming Constitution and all other applicable Wyoming constitutional requirements. Plaintiff has received confirmation via certified mail return that said "Wyoming Governmental Claim of Amy Huffer" was received at the business addresses of the Defendants, as well as at the home address of the Fair Board Chairman and the business office of the County Attorney who represents the Defendants. All of the Governmental Claim letters were delivered and received by certified mail between July 11, 2019 and July 19, 2019.

22. The Wyoming Governmental Claim of Amy Huffer was timely filed at least by July 19, 2019 pursuant to Wyo. Stat. §1-39-113(a), as all events identified in said governmental claim which are the basis of the claims discussed in said claims occurred or were occurring on an on-going basis within the two-year period preceding July 19, 2019.

23. This action against the Defendants is being timely commenced, through the filing of this complaint within the one year statute of limitations following the filing of the Wyoming Governmental Claim of Amy Huffer as provided for in Wyo. Stat. §1-39-114.

## VI.
## First Claim for Relief: Violation of the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq*

24. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

25. Plaintiff was an employee who was not exempt from the FLSA.

26. Defendants are employers under the FLSA who were required to compensation Plaintiff for all hours over 40 that she worked in a week in the form of time and a half payment for each overtime hour worked or, with the consent of the employee and employer, to a Comp Time arrangement, the accumulation of one and a half hours of Comp Time, to be used as paid leave by the employee, for each hour of overtime worked.

27. Although Defendants initially provided overtime compensation to Plaintiff if the form of a "Comp Time" arrangement, said arrangement did not comply with the FLSA because the hours accumulated were not in the form of one and a half hours of Comp Time for each hour of overtime worked and because as of March 2018, Defendants stopped allowing to Plaintiff to use even the more than 740 hours she had accumulated as paid time off between approximately July 2016 and March 2018. Thus, Defendants provided no overtime compensation, let alone any compensation at all, for overtime hours worked by Plaintiff in that timeframe, a violation of the FLSA.

28. From March 2018 to the Fall of 2019, when Plaintiff's employment ended, Plaintiff continued to regularly work in excess of 40 hours per work week. Defendants failed to

pay Plaintiff the required one and half times compensation for these hours worked in violation of the FLSA, and in fact provided no compensation at all for these hours worked.

29. These practices violation the provisions of the federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. As a result of these unlawful practices, Plaintiff suffered a loss of wages she was entitled to by law.

30. Defendants showed reckless disregard for the fact that their failure to make appropriate overtime compensation was in violation of the law. Defendants were informed that Plaintiff was working overtime hours. Defendants initially recognized their legal obligation to compensate Plaintiff for those hours by instituting the "Comp Time" arrangement. After several years of having that arrangement in place, whereby they knew the overtime hours Plaintiff was working, the "Comp Time" hours she was accumulating due to the overtime hours worked, and the number of "Comp Time" hours she was using for paid time off, the Defendants suddenly ended the "Comp Time" arrangement, making a knowing and deliberate decision both to deny Plaintiff not only compensation for the overtime hours she had already accumulated as "Comp Time" and to refuse to pay or compensate her for overtime hours she would be working going forward. Defendants' violations of the FLSA were knowing and willful.

## VII.
## Second Claim for Relief: Breach of Contract

31. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

32. As stated above, there was an agreement and practice put in place by the Fair Board, Plaintiff's immediate supervisor and employer, by which Plaintiff would be compensated for the overtime hours that she worked in the form of "Comp Time" hours that Plaintiff could

use for paid time off. This agreement was one of the terms of contract for Plaintiff's employment relationship with the Defendants.

33. The overtime hours that Plaintiff was working were in the performance of her job duties for Defendants and provided a benefit to Defendants.

34. The Fair Board's agreement to have Plaintiff accumulate "Comp Time" hours was both a recognition that Plaintiff was entitled to compensation for overtime hours worked, and a binding means by which compensation would be provided.

35. The Fair Board regularly received reports of information related to this agreement, including reports of the hours that Plaintiff was working, the number of overtime "Comp Time" hours that Plaintiff was accumulating, and the number of "Comp Time" hours that Plaintiff was using for paid time off.

36. As described above, the Fair Board suddenly breached the agreement and thus breached a term of its employment contract with Plaintiff by informing her that in March 2018 she could no longer use the more than 740 hours of accumulated overtime "Comp Time" which she had accumulated but not yet used at that time. The Fair Board provided no other form of compensation for those accumulated hours either.

37. The Fair Board's breach of its agreement with Plaintiff in this manner meant that Plaintiff worked more than 740 hours of overtime work for the benefit of the Defendants while receiving no paid time off or other form of compensation. These actions and breach of contract have therefore damaged Plaintiff and she is entitled to relief in the form of full and fair compensation for the hours that she worked.

## VIII.
## THIRD CLAIM FOR RELIEF: PROMISSORY ESTOPPEL

38. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

39. As stated above, after learning of the large number of overtime hours that would be required of the job in May 2015, Plaintiff went to the Fair Board to address the need for compensation for those hours. An agreement was reached between the Fair Board and Plaintiff to compensate her overtime hours in the form of "Comp Time" hours that would accumulate as she worked overtime and which she could use as paid time off.

40. Plaintiff's willingness to take and continue in the job, despite an extremely demanding work schedule that could see her working as much as 100 hours a week in some weeks, was due to the authorized agreement and representation from the Fair Board that she would be able to accumulate those overtime hours as "Comp Time" hours to be used as paid time off later. The Fair Board knew or reasonably should have known that Plaintiff would rely, and was relying upon, their representation and promise that she would accrue paid "Comp Time" hours. Plaintiff reasonably relied on the actions, communications, representations, and promises of the Defendants. Plaintiff would not have remained in that position or worked those hours but for such an agreement and representation.

41. The Fair Board's agreement to have Plaintiff accumulate "Comp Time" hours was both a recognition that Plaintiff was entitled to compensation for those overtime hours worked and a promised, binding means by which compensation would be provided.

42. The Fair Board regularly received reports of information related to this agreement, including reports of the hours that Plaintiff was working, the number of overtime "Comp Time" hours that Plaintiff was accumulating, and the number of "Comp Time" hours that Plaintiff was using for paid time off.

43. The Fair Board honored the agreement to compensate Plaintiff's overtime hours with "Comp Time" hours for nearly three years, from May 2015 until March 2018, when it suddenly changed position and told Plaintiff that she would no longer receive "Comp Time" hours for overtime hours worked, and that she could no longer use the "Comp Time" hours she had accumulated to date for paid time off.

44. At the time of the Fair Board's breach of the agreement in March 2018, Plaintiff had more than 740 hours of accumulated "Comp Time" hours which she had earned by working overtime hours between July 2016 and February 2018 but not yet used as paid time off. Plaintiff worked those 740 hours of overtime relying on the agreement and promise of the Fair Board to compensate her for those hours. But for the agreement and promise of the Fair Board to so compensate her for those hours, Plaintiff would have not continued in her job and would not have worked those hours. Plaintiff has been harmed by the action described herein and above by not receiving necessary and appropriate compensation for the overtime hours she so worked.

45. Under the principles of Promissory Estoppel, Plaintiff appropriately and reasonably relied on the agreement and promise of compensation for those overtime hours worked, and Defendants are estopped from denying compensation to Plaintiff for those hours. It is also fundamentally inequitable for the Defendants to retain the benefit of those hundreds of hours of overtime work without providing Plaintiff full and appropriate compensation. Defendants have been unjustly enriched by receiving the benefit of Plaintiff's work without paying for it.

## IX.
## Fourth Claim for Relief: Breach of the Covenant of Good Faith and Fair Dealing

46. The allegations of each of the preceding paragraphs are realleged and

incorporated herein by reference.

47. Plaintiff's employment relationship with the Defendants included an implied covenant of good faith and fair dealing.

48. As stated above, Defendants refused to provide overtime compensation as promised and agreed to for overtime hours worked between July 2016 and February 2018, and also failed to provide any form of overtime compensation, despite it being required by the FLSA, for overtime hours worked by Plaintiff between March 2018 and the Fall of 2019, when her employment ended.

49. Plaintiff was a non-exempt employee under the FLSA who was entitled to time and a half compensation for all hours worked over 40 in the work week. Defendants were obligated to pay such compensation under the FLSA. The Fair Board's agreement to have Plaintiff accumulate "Comp Time" hours was both a recognition that Plaintiff was entitled to compensation for those overtime hours worked and a promised, binding means by which compensation would be provided.

50. The Defendants' assignment of extremely heavy responsibilities to Plaintiff which required her to work large amounts of overtime hours and then arranging to compensate her for those thousands of hours of overtime work through "Comp Time" to be used as paid leave time, as well as the other factors relating to employment relationship described above, created a special relationship of trust and reliance between the Defendants and Plaintiff.

51. Plaintiff literally worked thousands of hours of overtime, including at times the amount of hours equivalent to more than another full time employee relying on the promise and agreement that she would be later able to use those accumulated hours as paid time off. In doing so Plaintiff was willing to benefit the Defendants by working those heavy hours, which

took her away from home and family, because she knew that she would later, at other times, be able to replace those worked hours with paid time off as compensation.

52. Defendants' actions violate the covenant of good faith and fair dealing in several ways, including by refusing to allow the Plaintiff to use the accumulated overtime "Comp Time" hours for paid time off despite the agreement that was in place when those hours were earned; by failing to compensate Plaintiff at all for the overtime hours she had worked; and by failing to compensate Plaintiff either through "Comp Time" hours or by overtime compensation for overtime hours that Plaintiff worked from March 2018 through the end of her employment in the Fall of 2019. Defendants' actions are notably unfair and egregious in light of the fact that Defendants have received and benefitted from many hundreds of overtime hours worked by the Plaintiff which they have refused to compensate her for.

53. Plaintiff has been harmed by the Defendants' actions and breach of the covenant of good faith and fair dealing by not receiving the compensation that the Defendants were obligated by agreement and law to give to her for those overtime hours worked.

## X.
## UNLAWFUL RETALIATION
## IN VIOLATION OF THE FLSA

54. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

55. The FLSA applied to Plaintiff's employment with Defendants at all times relevant herein.

56. Section 215(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), prohibits retaliation against an employee because she "has filed any complaint or instituted or caused to be instituted

any proceeding under or related to" the rights contained in the FLSA.

57. In November 2018, Plaintiff wrote to the Fair Board to address the failure to appropriately pay overtime hours in violation of the FLSA. In December 2018, Douglas Weaver, the county attorney (who represents all of the Defendants) responded to Plaintiff by means of a short letter summarily rejecting her position and asking her to explain her claim for overtime compensation. In January 2019, Plaintiff through her attorney, responded to Mr. Weaver's letter, by means of a letter that explained the basis for Plaintiff's non-exempt status under the FLSA and her right to over time compensation. That letter also asked Mr. Weaver to provide an explanation, if any, of why the Defendants did not believe that Plaintiff was entitled to such compensation. Neither Mr. Weaver nor the Defendants ever responded to that communication.

58. These communications by Plaintiff and Plaintiff's attorney constituted a "complaint" and were protected activities under the FLSA.

59. Defendants' response to Plaintiffs complaint was unlawful retaliation. On or about March 11, 2019, the Fair Board met with Plaintiff ostensibly to review her evaluation. Instead, the Board members aggressively and angrily attacked Plaintiff with false allegations about her performance. The allegations were not only untrue, but had never been previously discussed with Plaintiff, demonstrating a lack of good faith in a fair, credibly evaluation process. In this same context, Board members brought up the situation of the large number of accumulated but not compensated overtime hours which had been the subject of Plaintiff's complaint, making it clear that there was a connection between the complaint and what was occurring at that time with the Board's criticism of Plaintiff.

60. The Board put its unfounded criticisms and allegations against Plaintiff into a

written letter dated March 11, 2019 which threatened future termination of her employment.

61.     As discussed above, in July 2019, Plaintiff served on Defendants a formal complaint under the Wyoming Governmental Claims Act. This complaint recounted violations of the FLSA by defendants, including the failure to pay Plaintiff for past overtime hours worked and the ongoing failure to pay Plaintiff for overtime hours being currently worked under the FLSA. This governmental claim by Plaintiff constituted a "complaint" and was a protected activity under the FLSA.

62.     On or about September 10, 2019, as a direct and proximate result of Plaintiff having made complaints about violations of the FLSA by defendants due to unpaid overtime hours, the Fair Board decided to terminate Plaintiff's employment. This action by the Fair Board followed the act of Plaintiff's having made a serious and formal complaint of FLSA violations through the governmental claim process, but was timed by the Fair Board to occur after the busy season at the fair grounds was over so that the termination would have less impact on the operations of the Fair Board. At the time that Plaintiff was being personally notified by Fair Board members of her termination, Plaintiff asked why she was being terminated, to which one of the Board members present responded that it was because she now had a lawsuit, a reference to the governmental claim.

63.     The Fair Board gave Plaintiff a letter, dated September 12, 2019, which informed Plaintiff of its September 10, 2019 decision to terminate her. That letter stated reasons for her termination, none of which were true, none of which had previously been discussed with Plaintiff, and none of which could have been legitimate reasons for her termination. The false nature of the stated reasons for Plaintiff's termination demonstrate that those reasons were pretext to hide the true retaliatory motive of Defendants. Further, the lack of good faith by the

Fair Board to review or even discuss those reasons with Plaintiff prior to acting to terminate her demonstrate that the Defendants lacked a legitimate basis for her termination and instead acted with a retaliatory motive. At the same time that this notice of termination was given to Plaintiff, the Fair Board also gave Plaintiff a letter with a proposal to pay out her past unused but accumulated overtime hours, further demonstrating a connection between the act of terminating Plaintiff's employment and the governmental claim complaint discussing those hours which she had made.

64. The Defendants' actions to make false allegations against Plaintiff, to threaten to terminate her employment, and to then terminate Plaintiff's employment constituted retaliatory actions undertaken in direct response to Plaintiff's assertion of workplace rights, including the right to overtime compensation, under the FLSA.

65. As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered a loss of earnings and job benefits; she has suffered emotional distress; and she has incurred expenses.

66. Defendants committed the acts herein alleged maliciously and oppressively with the wrongful intent to injure Plaintiff. Defendants acted with an improper and wrongful motive amounting to malice and a conscious disregard for Plaintiff's rights. The acts taken towards the Plaintiff were carried out by Defendants acting in deliberate, callous and intentional manner with a desire to injure and damage.

67. Pursuant to § 216(b) of the FLSA, 29 U.S.C. § 216(b), Plaintiff is entitled to legal and equitable relief including compensatory and punitive (liquidated) damages, as well as reasonable attorney's fees and costs.

# XI.
# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

68. Judgment against the Defendants for an amount equal to Plaintiff's unpaid back overtime wages at the applicable overtime rate;

69. Judgment against the Defendants that their violations of the FLSA were willful;

70. Judgment for an equal amount to the wage damages referenced above as liquidated damages pursuant to the FLSA;

71. Compensatory damages for any and all consequential economic losses and damages suffered by Plaintiff as a result of the actions and events described herein, including but not limited to the loss of wages, loss of benefits, incurred costs and other economic losses and damages suffered by Plaintiff as a result of the Defendants' unlawful retaliation under the FLSA that resulted in her termination.

72. Judgment for liquidated damages pursuant to the FLSA equal to the amount of lost wages and benefits arising from Defendant's retaliatory termination of Plaintiff

73. General damages, including damages for embarrassment, humiliation, and emotional distress.

74. To the extent that liquidated damages pursuant to the FLSA are not awarded, then an award of prejudgment interest.

75. All costs incurred and reasonable attorney's fees for prosecuting these claims, a remedy which is available pursuant to the FLSA.

76. All other relief that the Court deems just and proper.

DATED this 8th day of May 2020.

          Amy Huffer, Plaintiff

          By: _____
          Gregory P. Hacker (Wyo. Bar No. 6-3347)
          Attorney for Plaintiff